IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Case No. 6:14-10106-JTM

STEVEN J. MEISEL,

        Defendant.

## MEMORANDUM AND ORDER

Defendant Steven J. Meisel is charged with two counts in the Indictment: distribution of child pornography (18 U.S.C. § 2252(a)(2)) and possession of child pornography (28 U.S.C. § 2252(a)(4)(B)). As it is the eve of trial, this matter is now before the court on the government's Motion in Limine (Dkt. 27). For the reasons stated below, the government's motion is granted.

### I.      Factual and Procedural Background

This case arises from defendant's alleged distribution and possession of child pornography. The court summarizes the relevant facts as alleged by the government.

On May 9, 2014, the Wichita Police Department conducted an investigation into the sharing of child pornography files on the Ares P2P (peer to peer) file sharing network. An investigator successfully identified a computer sharing and offering 281 files (76 of which were later identified by hash value as a known series of child pornography) under the nickname "uni1." A query of the identified IP database resolved to Sumner Communications. The police obtained a court order requiring Sumner Communications to reveal subscriber information for the user assigned to the identified IP address during the dates and times of the downloaded

session.  The user was later identified as Linda Thomas, an individual residing in Wellington, Kansas.

On June 9, 2014, an investigator observed a Mercury sedan with a Kansas license plate belonging to Linda Thomas and defendant Steven Meisel.  On June 10, 2014, the investigator obtained a search warrant for the Thomas/Meisel home.  The warrant was executed on June 13, 2014.  Ms. Thomas was present during the search.  Defendant was later located working at a local food bank and returned to the residence with the Wellington Police Department.  Defendant subsequently gave written permission for police to search his computer.

Defendant stated that he was the only user of his Compaq computer, which is password protected, and admitted to having the Ares program on his computer.  When asked about how the child pornography files got onto his computer, defendant admitted that he could have been looking at these images but, if so, it likely happened during one of his manic phases although, at the time, he could not remember the last time he had an episode.  He stated that if there was child pornography on his computer, he was the one responsible, but he did not know how it got there.

Police seized defendant's computer, along with an external hard drive, cell phone, digital camera, and 27 CD/DVDs.  Using forensic methods, the investigators located several hundred file names associated with child pornography on the external hard drive.  Defendant was arrested, booked, and placed into the Sumner County Jail.

Further forensic examination of the devices found in defendant's residence revealed that his computer had the Ares program installed, located under a password protected file, with the "uni1" nickname.  The investigation also revealed search terms used within the Ares program that are associated with child pornography, including pthc, hussyfan, kinderficker, kidzilla, kbv, and kdv.  Defendant's computer was found connected to an external hard drive which contained

roughly 2,000 videos and images of child pornography.   These images and videos had descriptive file names and had been separated into sub-folders, apparently based on their content. Some of these files had "modified" dates as recent as June 10, 2014, but others dated back days, weeks, months, and years earlier, indicating repeated activity on the external drive.

During an interview with Ms. Thomas, she claimed that she got her own computer approximately two years ago after defendant began using their shared computer so much that she could never use it.  Ms. Thomas also stated that she had found two sites of child pornography on the computer she and defendant previously shared and when she confronted defendant, he claimed that it was his son, Wesley Reusch, who was responsible for downloading the images. During his own interview, defendant also alleged that Reusch was responsible for the earlier material.

Defendant further claimed that he was the only person to use his computer for the past year, except for Jeffrey Hunter, a friend and former roommate of defendant's, as well as Ms. Thomas' caretaker, who used it one time on Monday, June 9, 2014, which happened to be the Monday before the search warrant.  Meisel was clear that he never gave anyone his password because he did not want anyone getting on his computer.  Thomas confirmed this during a second interview.

Law enforcement subsequently interviewed Jeffrey Hunter, who confirmed defendant's general refusal to let anyone use his computer.  Jeffrey recalled two instances in which he used defendant's computer to make purchases from Amazon.com, but did so only in defendant's presence.

The investigator submitted the images and videos located on defendant's external hard drive to the National Center for Missing & Exploited Children for comparison against its

previously identified child victim database.  The NCMEC reported a positive hit for a previously identified child victim on at least one image and one video taken from defendant's external hard drive.

On June 24, 2014, defendant was indicted on one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  There are also forfeiture allegations for the electronic equipment seized from defendant's home.

On or about March 12, 2015, defendant indicated that he intended to present evidence of "alternative perpetrators," namely Wesley Reusch, Jeffrey Hunter, and Steven Hunter.  On this same date, the government filed a Motion in Limine (Dkt. 27) to prevent introduction of such alternative perpetrator evidence absent any evidence to support a sufficient nexus between any of these three named individuals and defendant's computer, external hard drive, or Ares network profile.

Based on its review of the record and the relevant law, the court grants the government's motion.

## II.    Analysis

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Krider v. Conover*, 2012 U.S. Dist. LEXIS 50534, at *15 (D. Kan. Apr. 11, 2012) (citing *Holmes v. S.C.*, 547 U.S. 319, 324 (2006)). "That right, however, is not absolute, and States have broad latitude to establish rules excluding evidence from criminal trials." *Id.* "One of those well-established rules of evidence is that there must be some material or logical connection between the asserted facts and the inference or result they are designed to establish, to be relevant." *Id.*

With regard to third-party guilt evidence, the Supreme Court has held that "[e]vidence tending to show the commission by another person of the crime charged may be introduced by [the] accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded." *Holmes*, 547 U.S. at 327 (internal citation omitted). Evidence may be excluded "where it does not sufficiently connect the other person to the crime . . . [such as where it is] speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Id.*

The Tenth Circuit has set forth a test to be used when analyzing such alternative perpetrator evidence:

> Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted 'alternative perpetrator.' It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

5

*United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998); *see also United States v. Jordan*, 485 F.3d 1214, 1219 (denying introduction of alternative perpetrator evidence and holding that there must be a nexus between the crime charged and the alleged alternative perpetrator). *Compare United States v. Kulantunga*, 2010 U.S. Dist. LEXIS 103383 (D. Kan. Sept. 29, 2010) (finding that the nexus between the defendant and the alleged alternative perpetrator was not so tenuous as to prevent the defendant from presenting such evidence at trial).

As discussed below, defendant has failed to establish anything more than mere speculation as to the nexus between any of the identified "alternative perpetrators" and the crimes charged.

## A.      Wesley Reusch

The evidence establishes that Wesley Reusch is defendant's biological son who lived with defendant and Ms. Thomas for a period of time.  Defendant's evidence linking Reusch to the crimes charged is that some time, approximately a year to a year and half prior to law enforcement arriving at defendant's residence, Ms. Thomas found two sites of "kid pornography" on the computer she shared with defendant.  When she asked defendant about the websites, defendant blamed Reusch.  Defendant allegedly told law enforcement that he found a folder labeled "test" on his computer which contained pictures (one of which he reviewed). According to defendant, he erased all of the contents of this folder and changed his password.

The only evidence defendant is prepared to enter with regard to Reusch is as follows:

> Mr. Meisel found that Wesley had accessed two child pornography sites on his computer. Wesley had regular access to the computer and Linda's granddaughter saw him using Mr. Meisel's computer when he had been told by Mr. Meisel not to do so. Both Ms. Thomas and Jeffrey Hunter explained that Mr. Meisel told them, at the time, what happened regarding Wesley, particularly his accessing two child pornography sites.

Dkt. 32, at 7-8.

During the *in limine* hearing, defendant admitted that no one ever saw Reusch accessing child pornography on defendant's computer.   There simply is no evidence to sufficiently establish a nexus between Reusch's alleged use of the computer and the crimes charged.   As such, the government's motion as to Wesley Reusch is granted.

**B.     Steven Hunter**

Defendant's initial proffer as to Steven Hunter was as follows:

> Ms. Thomas also explained that Steve Hunter came to the house and that he knew the Wi-Fi password. Jeffrey Hunter explained that Steven lived at Linda's house for a while (along with Mr. Hunter's mother and her boyfriend). Jeffrey Hunter explained that Steve had a lot of young internet friends and an interest in younger boys. Jeffrey Hunter explained that he had a prior sexual incident with his younger brother Steve when Steve was a minor but Jeffrey has been "clean for over 10 years."
>
> . . . .
>
> Steven is facing a charge of indecent liberties with a minor.

Dkt. 32, at 5, 7.

Defendant later alleged that investigators searched Steven's cell phone in connection with his pending charge and that the search uncovered that at least one common image to those found on defendant's external hard drive.   Dkt. 39, at 2.   However, during the *in limine* hearing, defendant admitted that further review failed to match the image found on Steven's cell phone to any of those discovered on the external hard drive.   Again, without more, and in this case, *any* evidence, defendant simply cannot establish a sufficient nexus between Steven Hunter and the crimes charged.

The government's motion as to Steven Hunter is therefore granted.

C.      **Jeffrey Hunter**

Perhaps defendant's most substantial showing is with regard to Jeffrey Hunter, but even this evidence is tenuous at best.  Defendant essentially argues that, as Ms. Thomas' caretaker, Jeffrey had "unfettered access" to the house, including defendant's laptop and external hard drive.  Dkt. 32, at 8.  He was also a frequent visitor to defendant's residence and knew the Wi-Fi password.  Dkt. 32, at 8.  Defendant also claims that during his interview with law enforcement, Jeffrey admitted to the detective that

> he used Mr. Meisel's computer when Mr. Meisel was not present in the house to search through Amazon.com for "golf discs" related to Frisbee Golf. The government's expert has determined that Mr. Hunter's admitted use of the computer occurred on June 10, 2014, from 5:39 p.m. – 6:13 p.m. Mr. Hunter told the detective that Mr. Meisel was not present. A review of the Ares downloads of child pornography show that they occurred on June 10, 2014, at 2:21 p.m., 2:56 p.m., 4:00 p.m., 4:31 p.m. and then again at 6:40 p.m.

Dkt. 39, at 1.

During the *in limine* hearing, defendant attempted to link, by inference, the fact that because Jeffrey admitted to being on the computer from 5:39pm – 6:13pm using the website Amazon.com, he therefore must *also* have been the user that accessed and downloaded child pornography in the times prior to and after that Amazon.com search.  However, as noted above, "a defendant still must show that his proffered evidence on the alleged perpetrator is sufficient . . . to show a nexus between the crime charged and the asserted 'alternative perpetrator.'  *It is not sufficient* for a defendant merely to offer up unsupported speculation that another person may have done the crime."  *McVeigh*, 153 F.3d at 1191 (emphasis added)

Here, defendant's allegation that because Jeffrey used the computer for a lawful purpose between two times in which the computer was used to download child pornography, it *must* also be that Jeffrey was also the person responsible for accessing and downloading the child

8

Case 6:14-cr-10106-JTM   Document 43   Filed 03/24/15   Page 9 of 10

pornography.  This notion is merely "unsupported speculation" and lacks a sufficient nexus to link Jeffrey to the crime charged.  Furthermore, the evidence suggests that defendant was present and monitoring Jeffrey's use of the computer during this time.

On a related note, defendant also seeks to bring into evidence Jeffrey Hunter's prior juvenile record with regard to an incident of sexual misconduct that occurred with his brother, Steven Hunter.  During the hearing, the government verified that Jeffrey was fifteen (15) years old at the time of the incident, which occurred in 1996.

Ultimately, to be admissible, evidence has to be relevant. FED. R. EVID. 401.  Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Jeffrey Hunter's juvenile adjudication occurred nearly twenty years ago.  There is no evidence that he has been charged with, let alone convicted, of any relevant crimes more recently. Furthermore, there is no evidence that whatever occurred during Jeffrey's juvenile adjudication has *any* tendency to make the possibility that he accessed and downloaded child pornography on defendant's computer and/or external hard drive any more or less probable than it would be without the evidence *or* that his adjudication is of some kind of consequence in determining the action.

Moreover, even if such evidence was relevant, there is still a grave danger of prejudice, especially in light of the fact that defendant has nothing, aside from nebulous speculation, that Jeffrey was the actual perpetrator.  The court finds that Jeffrey's prior juvenile adjudication for sexual misconduct lends little, if any, support to defendant's argument that there is a sufficient nexus between Jeffrey Hunter and the crimes charged.  The government's motion with regard to Jeffrey Hunter is therefore granted.

9

**IT IS THEREFORE ORDERED** this 24th day of March, 2015, that the government's

Motion In Limine (Dkt. 27) is **GRANTED**.

<u>s\J. Thomas Marten</u>
J. THOMAS MARTEN
CHIEF JUDGE